UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | | |
|---|---|---|
| THERMAL DESIGN, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NUMBER: |
| | ) | 07-C-0765 |
| AMERICAN SOCIETY OF HEATING, | ) | |
| REFRIGERATING and | ) | |
| AIR-CONDITIONING ENGINEERS, INC. | ) | |
| ("ASHRAE"), | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### ASHRAE'S OPPOSITION TO
### THERMAL DESIGN'S MOTION FOR PRELIMINARY INJUNCTION

### INTRODUCTION

Thermal Design has failed to satisfy either of the first two threshold requirements for its

requested injunction:  likely success on the merits of its claims against ASHRAE and irreparable

harm to Thermal Design absent an injunction.  Thermal Design's claims are both untimely and

asserted against the wrong defendant.  Thermal Design's alleged harm – foregone profits from

lost sales – cannot qualify as irreparable.  For these reasons alone the Court should deny Thermal

Design's motion.

Although Thermal Design's failure to establish a likelihood of success or irreparable

harm absent an injunction absolves the Court of any need to consider them, the remaining two

elements militate against an injunction as well.  Thermal Design cannot demonstrate any harm to

it absent an injunction; it fares no better under an injunction than without one.  An injunction

would, however, wreak havoc on ASHRAE's standard-setting process, and discredit any new technical manuals that would issue under one. The balance of harm, therefore, weighs heavily in ASHRAE's favor. Finally, an injunction would disserve the public interest by creating uncertainty and leaving owners of buildings under construction with no guidance about how to meet the energy-efficiency standards that federal and state governments require.

By any reasonable measure, Thermal Design has fallen far short of the necessary showing to secure a preliminary injunction. The Court should therefore deny its motion.

## RELEVANT FACTS

ASHRAE seeks "to advance the arts and sciences of heating, ventilating, air conditioning and refrigerating to serve humanity and promote a sustainable world." Hernandez-Malaby Aff. Exh. M. In pursuit of this mission, it publishes and distributes over 100 technical manuals covering a broad range of areas, including energy efficiency, indoor air quality, thermal comfort, fans, heat pumps, icemakers, refrigeration, and solar energy. Claire Ramspeck Affidavit, ¶ 3. ASHRAE does not sell anything other than its technical products, which include standards, guidelines, handbooks, and educational courses. *Id*. at ¶ 5.

Reflecting the scope of its manuals, ASHRAE's membership includes "approximately 50,000 individuals from more than 100 nations," including "students, consulting engineers, mechanical contractors, building owners, and employees of manufacturing companies, educational institutions, research organizations, [and] government." Hernandez-Malaby Aff. Exh. N. Students, engineers, architects and medical researchers have also joined ASHRAE. *Id.*

ASHRAE's publications provide technical information about how to achieve its standards – in this case, for energy efficiency. As with its other standards, ASHRAE developed its energy-

efficiency standard as a "national voluntary consensus standard" through the "participation of its national and international members, associated societies, and public review." Hernandez-Malaby Aff., Motion to Dismiss Exh. A at 2. That "consensus" represents "'substantial agreement … more than a simple majority, but not necessarily a unanimity'" of the participants. *Id.* The energy-efficiency standard does not identify any specific manufacturer or product, and does not promote any particular method or style of building or type of insulation.

ASHRAE first promulgated its energy-efficiency standard in 1975 and, as Thermal Design's Complaint concedes, first incorporated the allegedly inaccurate data into the 1999 version of that standard. Compl., ¶¶ 13, 16, 17. *See also*, excerpts of 90.1-2004 Standard (attached as Hernandez-Malaby Aff. Exh. O). As Thermal Design further concedes, that data has remained unchanged since then. *See* Plaintiff's Affidavit of Daniel Harkins, ¶ 5; Hernandez-Malaby Aff., Motion to Dismiss Exhs. C, D.

## LEGAL STANDARD

A preliminary injunction requires the "exercise of a far-reaching power and is never to be indulged in except in a case clearly demanding it." *Builder's World Inc. v. Marvin Lumber & Cedar, Inc*., 482 F. Supp 2d 1065, 1070-71 (E.D. Wis. 2007). Thermal Design must demonstrate its reasonable likelihood of success on the merits and irreparable harm absent an injunction. *AM Gen. Corp. v. Daimlerchrysler Corp*., 311 F.3d 796, 803-804 (7th Cir. 2002) (affirming district court's denial of preliminary injunction). These two elements are crucial; if Thermal Design cannot establish them, the Court must deny the requested injunction. *Id.* at 804 ("A party with no chance of success on the merits cannot attain a preliminary injunction.") (*citing Kiel v. City of*

*Kenosha*, 236 F.3d 814, 815 (7th Cir. 2000));  *Anderson v. U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470, 474 (7th Cir. 2001) (affirming denial of preliminary injunction).

If Thermal Design meets these threshold burdens, it must then demonstrate two more elements:  (1) that its harm from no injunction outweighs ASHRAE's harm from an injunction; and (2) that the injunction will foster, rather than harm, the public interest.  *Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002).   On the balance-of-harms element, the Seventh Circuit follows a "sliding scale" approach: "…the more likely the plaintiff's chance of success on the merits, the less the balance of harms need weigh in its favor."  *Id*.

## ARGUMENT

**I.     Thermal Design Cannot Meet the Threshold Requirements for a Preliminary Injunction:  Likely Success on the Merits, and Irreparable Harm.**

    **A.     Thermal Design's Causes of Action Do Not Reach ASHRAE, and Are Too Late.**

Neither of Thermal Design claims – for violations of § 100.18, and for unfair competition – states a cause of action against ASHRAE, a non-commercial, non-profit 501(c)(3) standard-setting organization that does not compete against Thermal Design.  Moreover, Thermal Design has filed its statutory claim years too late.  Because these deficiencies doom Thermal Design's Complaint as a matter of law, the Court should deny the preliminary injunction as well.

          1.     *Section 100.18 Does Not Create a Cause of Action Against Non-Commercial Standard-Setting Organizations like ASHRAE.*

Section 100.18 protects consumers from misleading representations made to promote the sale of a product.  *RTE Corp. v. Dow Corning Corp.,* No. 85-C-1603, 1986 WL 15395, *4 (E.D. Wis. Nov. 12, 1986) (denying motion to dismiss) (copy attached as Hernandez-Malaby Aff. Exh. P).  Although originally restricted to advertising, the statute has expanded to apply to a variety of

commercially motivated representations: invitations to buy goods or services "offered by [the speaker]" *or* any "inducement[] to enter into any contract or obligation." § 100.18(1); *Uniek, Inc. v. Dollar Gen. Corp.*, 474 F. Supp. 2d 1034, 1037 (W.D. Wis. 2007). The "gist of the provision," in short, "prohibits the making of false or misleading representations to 'the public' *in the context of certain business transactions*." *Uniek*, 474 F. Supp. 2d at 1036 (emphasis supplied).

While broad, § 100.18 thus continues to apply only to commercial representations, and only customers or competitors of the defendant have brought claims under it. *See K&S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 295 Wis. 2d 298, 332, 720 N.W.2d 507, 525 (Wis. Ct. App. 2006) (upholding verdict for consumer purchasing press from machinery sales company); *Radford v. J.J.B. Enters.*, 163 Wis. 2d 534, 545, 472 N.W.2d 790, 795 (Wis. Ct. App. 1991) (upholding verdict for boat buyers against boat seller and restorer); *Tim Torres Enterprises, Inc. v. Linscott*, 142 Wis. 2d 56, 70, 416 N.W.2d 670, 675 (Wis. Ct. App. 1987) (upholding verdict for competitor against custard manufacturer). In cases involving the FTC Act, on which the Wisconsin legislature modeled § 100.18, *Uniek*, 474 F. Supp. 2d at 1037, courts have permitted claims against industry associations serving as "a device or instrumentality" of for-profit firms "having common business concerns." *Community Blood Bank of Kansas City Area, Inc. v. FTC*, 405 F.2d 1011, 1019 (8th Cir. 1969). *See also F.T.C. v. National Commission of Egg Nutrition*, 517 F.2d 485, 487-88 (7th Cir. 1975).

Recognizing that it neither competes with nor buys anything from ASHRAE other than technical manuals, Thermal Design argues that ASHRAE operates as a trade organization in the same way that the National Commission of Egg Nutrition, the Cement Institute, the California

Lumbermen's Council, and the North American Insulation Manufacturers Association ("NAIMA") do.  Motion at 7; *National Commission of Egg Nutrition*, 517 F.2d at 487-88; *Community Blood Bank*, 405 F.2d at 1019.  Trade organizations like these, however, function as "the tool[s] of corporations organized for profit."  *Community Blood Bank*, 405 F.2d at 1019.  They sponsor "paid advertisements" for their members' products.  *National Commission of Egg Nutrition*, 517 F.2d at 487.  They "promote[s] the general interests of the egg industry," or urge "the use of fiber glass, rock wool and slag wool insulation products."  *National Commission of Egg Nutrition*, 517 F.2d at 487-88; excerpt from NAIMA Website, (attached as Hernandez-Malaby Aff. Exh. Q).

ASHRAE, a technical society that represents the entire industry, including producers, users, students, professors, government workers, and agencies, is something else entirely.  ASHRAE membership is comprised of individual, not company members and therefore is not a trade association representing and protecting the interests of any company.  According to Thermal Design, ASRHAE describes itself as "the foremost source of technical and educational information [about] heating, ventilating, air-conditioning, and refrigerating."  Complaint, ¶ 5.  It "publishes and distributes" technical information.  *Id.*, ¶ 6.  ASHRAE advertises nothing on behalf of any manufacturer or company other than ASHRAE itself, and promotes the sale of nothing beyond its own technical manuals.  Ramspeck Affidavit, ¶ 5.  Its membership comes from construction, manufacturing, building management, government and academia -- not from the producers of a single product.  Hernandez-Malaby Aff. Exh. N.  Rather than advertising for a particular interest group, ASHRAE seeks to balance competing "interest categories."  Hernandez-Malaby Aff. Exh. O.

As even Thermal Design's Complaint acknowledges, ASHRAE is not an industry association. For that reason alone the Court should deny Thermal Design's motion.

    2.    *Thermal Design Cannot State a Claim for Unfair Competition Against a Non-Competitor Like ASHRAE.*

Thermal Design can state an unfair-competition claim under Wisconsin's common law only against a competitor. *See Mercury Record Productions, Inc. v. Economic Consultants, Inc.*, No. 80-1106, 1981 WL 138912, *3 (Wis. Ct. App. Oct. 27, 1981) (copy previously attached as Exh. H to Motion to Dismiss). Thermal Design's Complaint, however, does not allege that ASHRAE and Thermal Design compete: Thermal Design "develop[s] and provid[es] insulations systems for large non-residential metal buildings," while ASHRAE "publishes and distributes … trade related publications." Complaint, ¶¶ 4, 6. *See also* Motion at 8, 13 ("Thermal Design does not compete directly with ASHRAE"), ("ASHRAE and Thermal Design do not directly compete"). Because Thermal Design and ASHRAE do not compete, Thermal Design's unfair-competition claim faces no likelihood of success on the merits. The Court should deny the request for a preliminary injunction on this basis as well.

    3.    *Statutes of Repose and Limitation Bar Thermal Design's Claims.*

Thermal Design's claims are also unlikely to succeed because statutes of limitation and repose bar them.[1]

---

[1]    In an attempt to avoid repetition here, ASHRAE refers the Court to ASHRAE's Memorandum in Support of their Motion to Dismiss (filed September 17, 2007, pp. 4 - 6, and to its Reply Memorandum in Support of Motion to Dismiss (to be filed October 29, 2007) for an explanation of why statutes of limitation and repose bar Thermal Design's claims.

B.    Thermal Design Has an Adequate Remedy at Law, and Will Therefore Not Suffer Irreparable Harm.

The Court must deny the motion if Thermal Design cannot also establish the second threshold requirement, its irreparable harm. *Praefke Auto Elec. & Battery Co. v. Tecumseh Prods Co., Inc.,* 255 F.3d 460, 463 (7th Cir. 2001) (dissolving preliminary injunction and reversing judgment). The Seventh Circuit's examples of irreparable harm include very limited categories – without more, purely financial injury (including foregone profits from lost sales) does not qualify. *Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 386 (7th Cir.1984); *Praefke Auto*, 255 F.3d at 463; *Green River Bottling Co. v. Green River Corp.,* 997 F.2d 359, 363 (7th Cir. 1993) (affirming denial of injunction because plaintiff could recover lost profits in a later damages action). "Pecuniary losses" from lost sales, however, are the only damages that Thermal Design claims to have suffered. Complaint, ¶¶ 7, 26-28; Motion at 12; Plaintiff's Affidavit of Daniel Harkins, ¶¶ 5, 21.

Thermal Design's failure to meet the threshold requirements – likely success on the merits and irreparable harm – ends the need for any further analysis of Thermal Design's Motion. *See AM Gen. Corp.*, 311 F.3d at 803-804 (affirming district court denial of preliminary injunction); *Boucher v. School Bd. of the District of Greenfield*, 134 F.3d 821, 824 (7th Cir. 1998) (vacating grant of injunction).

## II.    Neither the Balance of Harms Nor the Public Interest Favor the Preliminary Injunction that Thermal Design Seeks.

Although its inability to demonstrate either a likelihood of success or irreparable harm decides the issue, Thermal Design also cannot demonstrate either of the remaining requirements:

that the balance of harms weighs in its favor, and that an injunction will not harm the public interest.

A.    The Harm to ASHRAE from an Injunction Greatly Outweighs Any Harm to Thermal Design Absent One.

The technical manuals at issue in this lawsuit are "national voluntary consensus" standards developed under ASHRAE's auspices."  Hernandez-Malaby Aff. Exh. O.  The American National Standards Institute (ANSI) accredits ASHRAE's standards as meeting "essential requirements for openness, balance, consensus and due process." Hernandez-Malaby Aff. Exh. R.  As ANSI standards require, a Project Committee is appointed specifically for the purpose of writing the standard.  Hernandez-Malaby Aff. Exh. O.  Although Project Committee members need not belong to ASHRAE, "all must be technically qualified in the subject area of the Standard."  *Id*.  The industry "consensus" represented in standards "signifies the concurrence of more than a simple majority, but not necessarily unanimity" of "directly and materially affected interest categories."  *Id*.  The consensus is reached by members of the Project Committee, which includes representatives from many various perspectives, including government, utilities, code officials, manufacturers, and consulting engineers. ASHRAE subjects this industry consensus to continuous review and revision under procedures also certified as ANSI-compliant.  *Id*.

Court-ordered revisions to ASHRAE's standards, as Thermal Design requests, would falsify every one of the representations listed immediately above.  The altered standards would not, for example, represent an industry consensus of disinterested experts, and the revisions would not result from ANSI-certified continuous maintenance procedures.  They would instead

reflect a generalist Court's assumption – on precious little evidence – that Thermal Design's purported data is correct, and the industry-consensus data is not. This harm to ASHRAE is irreparable, and enormous.

Thermal Design, on the other hand, would suffer little if any damage absent an injunction. By their adoption into federal and state law, the data that Thermal Design disparages as inaccurate would continue to bind customers in at least 35 states and the District of Columbia – including, allegedly, Wisconsin. 42 U.S.C. §§ 6833(b)(1), (2), 6834(a)(2)(A); Hernandez-Malaby Aff., ASHRAE's Opp. to TRO Exh. K; Complaint, ¶¶ 10-11. Moreover, enjoining ASHRAE's publication of the 2007 version would, depending on the jurisdiction, leave the (allegedly) equally flawed 2004, 2001 or 1999 versions in place, doing Thermal Design no good. Thermal Design would, in short, fare no better with the requested injunction than it does now, or than it would after ASHRAE publishes the 2007 version.

B.    The Proposed Injunction Would Harm the Public Interest.

Thermal Design contends that the preliminary injunction would serve the public interest because "building owners are paying thousands of dollars more in energy than they would be if their buildings truly met the energy standard." Motion at 13. That statement assumes that:

- an injunction would help owners of existing metal buildings to conserve energy;

- building owners would ignore the identical compliance data that remains incorporated into federal and state law; and

- if they chose to ignore the federally and state-mandated compliance data in favor of some other standard, building owners would somehow know how to achieve the required energy efficiency.

Each of these assumptions is either untrue or supported by no evidence. First, owners of already constructed buildings will likely not re-insulate, since to ASHRAE's knowledge no state requires that owners retrofit existing buildings to meet newly promulgated standards. Second, Thermal Design offers no evidence to suggest that owners of metal buildings under construction during this lawsuit would ignore federally or state-approved compliance data in favor of a new standard that omitted compliance data altogether. Finally, Thermal Design provides no reason to suppose that builders who ignore government-endorsed data will guess correctly about what to do. Some builders could well over-comply, others may under-comply, and still others may continue to use the current requirements. The requested injunction will likely result in greater confusion, not greater energy efficiency, among the public.

# CONCLUSION

For any and all of the reasons set forth above, the Court should deny Thermal Design's

motion for a preliminary injunction.

Respectfully submitted, this 26th day of October, 2007.

s/Cristina D. Hernandez-Malaby_____
CRISTINA D. HERNANDEZ-MALABY
QUARLES & BRADY LLP
411 East Wisconsin Avenue
Milwaukee, WI  53202-4497
414.277.5000 (telephone)
414.978.8977 (facsimile)
chernand@quarles.com


Of Counsel:

M. RUSSELL WOFFORD, JR.
F. JOY RIDDICK-SEALS
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, Georgia  30309
404.572.4600 (telephone)
404.572.5141 (facsimile)

*Attorneys for Defendant ASHRAE*