UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

THERMAL DESIGN, INC.,

        Plaintiff,

v.                                               Case No.: 07-C-765

AMERICAN SOCIETY OF HEATING,
REFRIGERATING AND AIR-CONDITIONING
ENGINEERS, INC.,

        Defendant.

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION**

Thermal Design submits this brief in further support of its motion seeking a preliminary injunction to prohibit the continued publication of false statements of fact contained in ASHRAE 90.1-2004 and to preempt the publication of the same false statements contained in the soon to be published ASHRAE 90.1-2007. Thermal Design incorporates by reference the arguments contained in its *Memorandum of Law in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction* as well as the arguments contained in *Plaintiff's Response to Defendant's Motion to Dismiss*.

A preliminary injunction is necessary to mitigate the ongoing irreparable harm caused by ASHRAE's publication of false, deceptive, and misleading information. The information, which ASHRAE conspicuously has <u>not</u> denied as false, not only harms Thermal Design's business, but also facilitates fraud on commercial building owners in Wisconsin and across the United States – effectively circumventing Federal and State Energy Codes and resulting in wasted energy and millions of dollars in increased heating and cooling costs to defrauded building owners. Thermal Design is entitled a preliminary injunction because it has demonstrated a likelihood of success on

the merits, and that failure to enjoin ASHRAE will result in irreparable harm. Moreover, ASHRAE will not be harmed by the injunction and its issuance will promote the interests of the public. Thermal Design respectfully requests that this Court grant its motion.

## I. THERMAL DESIGN HAS DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS.

### A. Thermal Design has properly asserted claims against ASHRAE.

Thermal Design has stated a claim for violation of WIS. STAT. § 100.18 and common law unfair competition. Thermal Design's claims are timely as they are based on false statements of fact that are currently being published, and will continue to be published in ASHRAE 90.1-2004, and the soon to be published update ASHRAE 90.1-2007. Moreover, ASHRAE has approved and published at least one change to 90.1, as evidenced by "Addendum K," (attached hereto as Exhibit A), renewing and heightening the need for resolution of Thermal Design's claims.

WIS. STAT. § 100.18 prohibits Defendant from making, publishing, disseminating, circulating, or placing before the public an advertisement, announcement, statement, or representation of any kind relating to the purchase, sale, hire, use or lease of real estate, merchandise, securities, service or employment, that contains any assertion, representation or statement of fact which is untrue, deceptive *or* misleading. *See Tim Torres Enterprises, Inc. v. Linscott*, 142 Wis. 2d 56, 65, 416 N.W.2d 670, 673 (Ct. App. 1987). The statute permits a person to sue in civil court for fraudulent representation if he or she suffers a pecuniary loss because of a violation of the statute. WIS. STAT. § 100.18(11)(b). Thermal Design alleges and identifies ASHRAE statements and representations of fact that are false, deceptive and misleading, and seeks recourse consistent with the intent of Wisconsin's DTPA. ASHRAE's pass-through reproduction of NAIMA's false advertisement materials provides NAIMA and its members the appearance of credibility, thereby increasing the profits of its members while

causing Thermal Design to face unfair competition and suffer pecuniary loss. ASHRAE's action additionally facilitates the sales of insulation systems in Wisconsin that do not truly meet the Energy Code.

Thermal Design will be able to establish ASHRAE's financial motivation for propagating the interests of NAIMA and other members who profit from the false statements of fact. The FTC defines a liable "corporation" as any company which is organized to carry on business for its own profit or that of its members. *See* 15 USC § 44 sec 4. ASHRAE is materially interested in the insulation trade not only because it has set itself as the standards organization for the insulation trade but also because it propagates the agenda, and in this case, the false, deceptive, and misleading materials, of its insulation trade members for profit. Early discovery[1] has established that upon receipt of Thermal Design's inquiries regarding 90.1 and the false U-factors stated therein, ASHRAE deferred *directly* to NAIMA in responding to the "issues with Thermal Desi[gn] and Mr. Harkins." (ASHRAE000034, attached hereto as Exhibit C.) Not only does this demonstrate NAIMA's control over 90.1, but it is also an example of ASHRAE failing to implement its own published procedures. (Excerpt from ASHRAE Project Committeee Manual of Procedures, attached hereto as Exhibit D, p. 32.) Moreover, NAIMA and its five members have paid ASHRAE nearly $300,000 for "advertising," "contributions" and "expo" over the last few years. (ASHRAE Revenues 2003 – 2007, attached hereto as Exhibit E.) These revenues, coupled with ASHRAE's deference to NAIMA and its concession that NAIMA has

---

[1] With permission of this Court, Thermal Design served ASHRAE with preliminary discovery requests. ASHRAE's responses to said discovery were wholly inadequate, consisting of redacted documents and blank/generic forms. For example, ASHRAE provided a blank "Potential Sources of Bias/Conflict of Interest Statement of Inclinations, Interests and Affiliations" form, rather than the one(s) provided to it by NAIMA. (ASHRAE000067, attached hereto as Exhibit B.) Despite its failure to fully respond to Thermal Design's discovery, ASHRAE provided no privilege log or meaningful explanation for its redacting and/or withholding of documents. Nevertheless, several of the documents ASHRAE *did* produce evidence Thermal Design's likelihood of success on the merits for reasons stated herein.

voting members on the very committee that implements the publication of 90.1, demonstrate that Thermal Design can prevail against ASHRAE in this action for the publication of false information.

> **B. ASHRAE has neither denied that the statements at issue are false nor has it provided the documents or information it relied upon in generating the statements.**

The fact that ASHRAE has never denied that the statements at issue are false is telling. As demonstrated by Thermal Design's affidavits and expert reports, ASHRAE is publishing, and will publish in ASHRAE 90.1-2007, untrue, deceptive and misleading representations of fact regarding the thermal performance of over-the-purlin metal building insulation systems. The systems described in Appendix A of ASHRAE 90.1-2004 simply do not perform as advertised.

ASHRAE did not develop the reported U-values, but instead adopted advertised U-values of NAIMA. (*See* Affidavit of D. Harkins, ¶ 7.) NAIMA's advertisement claims that the U-values were developed through an ANSYS Finite Element Analysis ("FEA") software program and then verified by comparing the results to available "hot box testing." (*See Memorandum of Law in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction* at Exhibit D, NAIMA brochure, p. 3.) Despite Thermal Design's multiple requests of ASHRAE and NAIMA, neither company could provide the modeling parameters for the FEA. (*See* Affidavit of D. Harkins, ¶ 13.) The FEA, like any computer software program, is only as good as the parameters used to develop the modeling: garbage in= garbage out. Despite Thermal Design's direct inquiry, no one for ASHRAE or NAIMA would admit that the FEA was based on typical construction assemblies. (*See* Affidavit of D. Harkins, ¶ 15.)

Finally, discovery has shown that Charles C. Cottrell of NAIMA has acknowledged "problems" with the U-Factors in Table A2.3. (ASHRAE000035, attached hereto as Exhibit F.)

- 4 -

Case 2:07-cv-00765-WEC    Filed 01/18/08    Page 4 of 8    Document 55

ASHRAE must be enjoined from continued publication of information that it apparently cannot substantiate, and that its own members have acknowledged as problematic. Because the information is false, and in light of the circumstances stated herein and in Plaintiff's previously filed materials, Thermal Design has demonstrated the requisite likelihood of prevailing against ASHRAE on the merits.

## II. THERMAL DESIGN HAS DEMONSTRATED THAT FAILURE TO ENJOIN ASHRAE WILL RESULT IN IRREPARABLE HARM.

Continued publication of the false information with the ASHRAE "stamp-of-approval" will cause irreparable harm to Thermal Design. Enjoining ASHRAE from publishing the false information is necessary since there is no adequate remedy of law.

Thermal Design competes against ASHRAE's members including but not limited to NAIMA, NAIMA's members and NAIMA's customers selling NAIMA members' products. (*See* Affidavit of D. Harkins, ¶¶ 10 and 16.) ASHRAE promotes the interests of its members. ASHRAE advertises that it "uses its best efforts to promulgate the Standards and Guidelines for the benefit of the public in light of available information and accepted industry practices." (*See Memorandum of Law in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction* at Exhibit C, Disclaimer, p. 2.) Such diligence was not practiced in relationship to the false information at issue in this case. Instead, the special interests of its committee and sub-committee members were allowed to circumvent the system and create a distinct competitive advantage for competitors of Thermal Design. So much so in this instance that NAIMA is permitted to dictate and control the publication of false information to increase its own and ASHRAE's profits. (*See* Exhibit C, F.)

ASHRAE refuses to correct the false information and proposes to republish the 90.1-2007 major update of the Standards with full knowledge that the information the NAIMA

- 5 -

provided is scientifically unsupported, and in view of overwhelming evidence that the values provided by NAIMA are false. (*See* Affidavit of D. Harkins, ¶ 17.) Thermal Design has been and continues to be denied the right to peer review of the information provided by NAIMA and published by ASHRAE, (*See* Affidavit of D. Harkins, ¶ 12), something for which there is no remedy at law.

In addition, ASHRAE only publishes revised 90.1 every three years and if it is not enjoined at this point, there will not be an opportunity to change this false publication until 2010. (*See* Affidavit of D. Harkins, ¶ 6.) ASHRAE Standards including the Appendix A have been adopted by the Department of Energy and the State of Wisconsin. Thermal Design will continue to lose sales as a result of the "free pass" given to its competitors who are able to sell a cheaper non-conforming insulation system. Thermal Design may never be able to fully calculate or determine sales lost as a result of consumers and the State's reliance on the false information.

### III. ASHRAE WILL NOT BE HARMED BY THE INJUNCTION AND ITS ISSUANCE WILL PROMOTE THE INTERESTS OF THE PUBLIC.

Enjoining ASHRAE from publishing false statements of fact regarding prescriptive compliance with the energy code will not prevent ASHRAE from continuing to publish the remainder of the 90.1 Standard. ASHRAE argues that issuing the injunction will "falsify" the published information. This argument is quite backwards, as issuing the injunction will require ASHRAE to *correct* information that is already false. To suggest that requiring ASHRAE to substantiate its scientific information that is relied upon by the public would somehow "harm" ASHRAE is absurd. If anything, substantiating the information would bolster ASHRAE's credibility.

Not only will ASHRAE be unharmed by the proposed injunction, but also, issuing the injunction will serve public interests. In guised efforts to protect the financial interests of

NAIMA and its members, ASHRAE argues that the injunction is unnecessary since existing buildings are unlikely to be re-insulated and are not required to be retrofitted, and that the injunction will result in "confusion" over compliance standards. In other words, ASHRAE suggests that going forward, rather than simply correcting a problem that results in wasted energy and millions of dollars in unnecessary energy expenses, it should be permitted to continue to promulgate false information to avoid "confusion." This position is irresponsible and wholly contrary to public interests. It is undisputed that the U.S. Energy Conservation and Production Act is designed to conserve energy in the public's best interest. The false statements of fact in Chapter 5 and Appendix A allow inferior roof and wall insulation systems to go unchecked for true thermal performance compliance. Energy is being wasted because the buildings are not insulated adequately. Building owners are paying millions of dollars for this wasted energy. Additionally, once the underperforming system is installed, it is cost prohibitive for most building owners to completely replace the system with a system that truly meets code. The public would be best served by correcting the false information to conserve energy and promote responsible practices that result in efficient buildings going forward.

### III. CONCLUSION

Thermal Design has demonstrated that its case has a likelihood of success on the merits and that it will suffer irreparable harm if the injunction is not granted. Based on the foregoing, Thermal Design respectfully requests that the Court enter a preliminary injunction prohibiting the current and future publication of the false information including the false U-factor statements in Appendix A Tables A2.3 and A3.2 and related information contained in Tables 5.5-1 through 5.5-8 in Chapter 5 of ASHRAE 90.1-2004 and soon to be published 90.1-2007.

Respectfully submitted this 18th day of January, 2008.

                                        s/ John G. Goller
John G. Goller, SBN 1045608
*Attorney for Plaintiff*
von BRIESEN & ROPER, s.c.
411 East Wisconsin Avenue, Suite 700
Milwaukee, WI 53202
Telephone: (414) 287-1242
Fax: (414) 276-6281
E-mail: jgoller@vonbriesen.com

20882785_1.DOC

- 8 -