UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THERMAL DESIGN, INC.,

    Plaintiff,

v.                                                            Case No. 07-C-765

AMERICAN SOCIETY OF HEATING,
REFRIGERATING and AIR-CONDITIONING
ENGINEERS, INC.,

    Defendant.

**DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS AND
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**I. PROCEDURAL BACKGROUND**

On August 24, 2007, the plaintiff, Thermal Design, Inc. ("Thermal Design"), filed a complaint in the United States District Court for the Eastern District of Wisconsin alleging that the defendant, American Society of Heating Refrigerating and Air-Conditioning Engineers, Inc. ("ASHRAE"), acted in violation of Wisconsin's Deceptive Trade Practices Act (Wis. Stat. § 100.18) and engaged in common law unfair competition.[1] On September 17, 2007, ASHRAE filed a motion to dismiss the complaint. That motion is now fully briefed and is ready for resolution.

On October 10, 2007, Thermal Design moved the court for the issuance of a temporary restraining order and preliminary injunction, seeking to enjoin ASHRAE from "the current and future publication of [the] identified false information." (Prelim. Inj. Mot. 1.) On October 18, 2007, following a motion hearing, the court denied Thermal Design's motion for a temporary restraining order and set a briefing schedule for the preliminary injunction motion. On November 20, 2007,

---

[1] The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds $75,000.

following a motion filed by Thermal Design, the court amended the briefing schedule for the preliminary injunction motion, providing the parties with time to conduct discovery, limited in scope to the issues raised by the preliminary injunction motion. The plaintiff's motion for preliminary injunction is now fully briefed and is ready for resolution.

## II. FACTUAL BACKGROUND

Some background information is needed to set the stage for ruling on the parties' respective motions. The background information is gleaned from the parties' submissions.

ASHRAE is a corporation whose self-proclaimed mission is "to advance the arts and sciences of heating, ventilating, air conditioning and refrigerating to serve humanity and promote a sustainable world." (Def's Resp. to Prelim. Inj. Mot., Ex. M at 1.) In pursuit of this mission, ASHRAE publishes and distributes over 100 technical manuals covering a broad range of areas, including energy efficiency, indoor air quality, thermal comfort, fans, heat pumps, icemakers, refrigeration, and solar energy. (Ramspeck Aff. ¶ 3.) These publications provide technical information about how to achieve its standards – in this case, for energy efficiency. (Def's Resp. to Prelim. Inj. Mot. 2.)

Thermal Design is a business engaged in the development and provision of insulation systems for large non-residential metal buildings. (Compl. ¶ 4.) Thermal Design's primary product line consists of ceiling and wall insulation systems. (*Id.*)

Under the United States Energy Conservation and Production Act, all non-residential metal buildings in the United States that are heated or cooled are required to meet a minimum energy conservation standard. (Prelim. Inj. Mot. 2.) The Department of Energy ("DOE") established ASHRAE's Standard 90.1, *Energy Standard for Buildings Except Low-Rise Residential Buildings*, as the minimum standard for all state building energy codes. (*Id.*) One component of the energy efficiency of a metal building is the overall thermal efficiency of the roof structure, also known as

the U-Value or the U-Factor. (*Id*.) The U-Value gives a numeric rating of the amount of heat that passes through a building's roof; therefore, the lower the U-Value the more energy efficient the insulation method. (Compl. ¶ 13.) For example, a metal building, such as a temperature conditioned athletic field house or indoor tennis court, is required to have a roof insulation system that, when installed, provides for a maximum overall roof heat loss U-Value of less than .065. (Prelim. Inj. Mot. 2.) If the insulated roof system of a metal building does not meet the minimum requirement set forth in ASHRAE's Standard 90.1, it does not pass the state and federal building/energy code. (*Id*.) Similar codes apply for wall thermal performance of conditioned metal buildings. (*Id*. at 3.) Appendix A of Standard 90.1 lists numerous insulation methods and their corresponding U-Values to aid in code compliance. (Compl. ¶ 20.)

Thermal Design alleges that beginning in 1999 ASHRAE "dramatically relaxed U-Value requirements for metal buildings and also included Appendix A Tables containing U-Values for metal building insulation for five-foot spaced purlin theoretical models." (Compl. ¶ 13.) Thermal Design alleges that the new U-Values were not independently developed and tested by ASHRAE. (Compl. ¶¶ 15, 20.) Instead, Thermal Design alleges that the U-Values were provided to ASHRAE by the North American Insulation Manufacturers Association ("NAIMA"). (*Id*.) NAIMA then uses the U-Values listed in ASHRAE Standard 90.1 in its brochures with the purpose of promoting the use of NAIMA's 202 certified fiberglass insulation. (*Id*. ¶ 16.) Specifically, Thermal Design alleges that the U-Values NAIMA provided to ASHRAE:

> are inaccurate, incomplete and insufficient for accurately determining the overall U-Value of the roof assembly and true compliance with the minimum requirement of the Standard and related code. . . . The advertised U-Values give the presumption of Energy Code compliance to NAIMA insulation assemblies that upon information and belief do not meet the minimum U-Value required by the Energy Code.

(*Id*. ¶¶ 23, 25.) Further, Thermal Design contends that:

3

> Despite knowledge of the false, deceptive and misleading character of the advertised U-Values, and without a good faith belief in the accuracy of the information, ASHRAE continues to publish its 90.1-2004 Standard, and upon information and belief will publish an updated version of the 90.1 Standard in October of 2007, containing the same false, deceptive and misleading information.

(Compl. ¶ 30.) Thermal Design argues that the inaccurate U-Values listed for NAIMA's metal building assemblies, allegedly the only assembly systems listed in Appendix A, "give unfair advantages to Thermal Design's competitors who sell and promote the systems represented in Appendix A." (Compl. ¶¶ 26, 27.)

### III. DISCUSSION

As previously stated, two motions are currently pending before the court: ASHRAE's motion to dismiss and Thermal Design's motion for preliminary injunction. The court will address each motion in turn.

**A.    Motion to Dismiss**

A motion pursuant to Fed. R. Civ. P. 12(b)(6) requires the court to decide whether the plaintiff's pleadings actually state a claim upon which relief can be granted. For the purposes of a motion to dismiss, all factual allegations of the complaint are taken as true. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Eisen v. McCoy*, 146 F.3d 468, 470 (7th Cir. 1998). Such allegations must be viewed liberally and in the light most favorable to the plaintiff. *Harrel v. Cook*, 169 F.3d 428, 431 (7th Cir. 1999). A complaint must contain enough "[f]actual allegations . . . to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). However, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting

*Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 127 S. Ct. at 1969. However, the court is not required to "ignore any facts alleged in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir. 1988).

ASHRAE asserts that the court should dismiss Thermal Design's claims because (1) "Thermal Design has filed its claims two to five years late under the respective statutes of limitations and repose"; (2) "Thermal Design has failed to allege that ASHRAE – who does not compete in any way with Thermal Design – has said anything qualifying as a public advertisement or sales announcement under Wisconsin's Deceptive Trade Practices Act"; and (3) "the statements that Thermal Design *does* identify in its Complaint – those concerning compilations of test data reached by industry consensus – are nowhere properly alleged to be false." (Def's Br. 1.) For the reasons which follow, ASHRAE's motion to dismiss will be granted.

    1.    *Statute of Limitations*

ASHRAE moves the court to dismiss Thermal Design's complaint based on a finding that each of Thermal Design's claims – violations of Wis. Stat. § 100.18 and common law unfair competition – are statutorily time barred. ASHRAE's motion to dismiss, insofar as it is predicated on the assertion that the plaintiff's claims are statutorily time barred, will be denied.

The Wisconsin Deceptive Trade Practices Act ("DTPA") disallows claims filed "more than 3 years after the occurrence of the unlawful act or practice which is the subject of the action." Wis. Stat. § 100.18(11)(b)(3). ASHRAE contends that "Thermal Design alleges a single 'unlawful act or practice': ASHRAE's 'pass-through reproduction' of NAIMA-provided test data" and that "[t]hose

5

data – the efficiency values associated with metal-building insulation – have not changed since ASHRAE's first 'reproduction' of them in 1999." (Def's Br. 4-5; citing Compl. ¶¶ 8, 17 and Exs. C and D.)[2] Accordingly, ASHRAE moves the court to find that because "Thermal Design thus sues under § 100.18 based on alleged misrepresentations first made eight years ago – more than five years since the statute of repose on that claim expired . . . the Court must dismiss Thermal Design's [DTPA] claim." (Def's Mot. 5; citing *Staudt v. Artifex Ltd.*, 16 F. Supp. 2d 1023, 1031 (E.D. Wis. 1998) (granting motion to dismiss on statute of limitations).)

In response, Thermal Design claims that its DTPA claim is "based on false statements of fact that are currently being published and that will continue to be published in ASHRAE 90.1-2004 and the soon to be published update ASHRAE 90.1-2007."[3] (Pl's Resp. 2-3.) More specifically, Thermal Design states that "[t]he unlawful practice alleged in this lawsuit continues to occur, and therefore, the statute of repose has not been triggered." (*Id*. at 3.) It alleges that the complaint adequately summarizes as much at paragraph 30, stating that:

---

[2] Exhibit C purports to provide the disputed U-Value tables for insulation systems installed in metal building walls as published by ASHRAE in 1999 and 2004. Exhibit D purports to provide the disputed U-Value tables for insulation systems installed in metal building roofs as published by ASHRAE in 1999 and 2004. Both exhibits establish that the published data has remained unchanged since 1999.

Although Fed. R. Civ. P. 12 ordinarily limits the court's review to the complaint and its attachments, the court may also consider documents incorporated into the complaint by reference. *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint, and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss.")

Because Thermal Design references the U-Value tables for 1999 and 2004 throughout its complaint, the tables are central to Thermal Design's claims, and ASHRAE attached the tables to its motion to dismiss, the court may properly consider these documents in ruling upon ASHRAE's motion to dismiss.

[3] Plaintiff's complaint and response to the motion to dismiss were filed prior to ASHRAE's scheduled update of Standard 90.1. The court assumes that ASHRAE did indeed republish Standard 90.1 in October of 2007, prior to the issuance of this decision and order.

6
Case 2:07-cv-00765-WEC   Filed 04/25/08   Page 6 of 18   Document 61

> 30. Despite knowledge of the false, deceptive and misleading character of the advertised U-Values, and without a good faith belief in the accuracy of the information, ASHRAE continues to publish its 90.1-2004 Standard, and upon information and belief, will publish an updated version of the 90.1 Standard in October of 2007, containing the same false, deceptive and misleading information.

(*Id.*; citing Compl. ¶ 30.)

The parties advance similar arguments with respect to Thermal Design's common law unfair competition claim.

I will construe the DTPA claim in this case as being similar to a defamation or libel claim, in which the challenged communication is reproduced in multiple editions of the same publication. In such situations, the Wisconsin Supreme Court has "held that every sale and delivery of a written or printed copy of a libel is a fresh publication" thereby creating a new cause of action. *Voit v. Wisconsin State Journal*, 116 Wis. 2d 217, 223, 341 N.W.2d 693, 697 (1984) (citing *Street v. Johnson*, 80 Wis. 455, 458 (1891)). Applying the rule set forth by the Wisconsin Supreme Court, I deem each edition of Standard 90.1, in 1999, 2004, and 2007, as creating a new cause of action. Accordingly, because Standard 90.1 was printed in 1999, 2004, and 2007, I am persuaded that the statute of repose does not time-bar the plaintiff's claims.

    2.    *Wisconsin's Deceptive Trade Practices Act (Wis. Stat. § 100.18)*

In the alternative, however, ASHRAE argues that Thermal Design's DTPA claim "proposes an unprecedented extension of § 100.18" in that it attempts to "stretch[] a statute concerned with 'advertisements' or 'sales announcements' to cover purely technical data published by a company unengaged in the trade that it studies." (Def's Br. 7.)

The DTPA provides, in pertinent part:

> No person, firm, corporation or association, or agent or employee thereof, with intent to sell, distribute, increase the consumption of or in any wise dispose of any . . . merchandise . . . or anything offered by such person, firm, corporation or association, or agent or employee thereof, directly or indirectly, to the public for sale, hire, use or

7

> other distribution, or with intent to induce the public in any manner to enter into any
> contract or obligation relating to the purchase, sale, hire, use or lease of any . . .
> merchandise . . . shall make . . . an advertisement, announcement, statement or
> representation of any kind to the public relating to such purchase, sale, hire, use or
> lease of such . . . merchandise . . . which advertisement, announcement, statement or
> representation contains any assertion, representation or statement of fact which is
> untrue, deceptive or misleading.

Wis. Stat. § 100.18(1).

ASHRAE argues that § 100.18 "covers commercially motivated representations: invitations to buy goods or services 'offered by [the speaker]' *or* any 'inducement[] to enter into any contract or obligation." (Def's Br. 7; citing § 100.18(1) and *Uniek v. Dollar Gen. Corp.*, 474 F. Supp. 2d 1034, 1037 (W.D. Wis. 2007).) ASHRAE further argues that "courts have interpreted § 100.18 to provide a cause of action to: (1) consumers defrauded by the seller/defendant in a business transaction, or (2) competitors injured by their competitor/defendants' fraudulent business practices." (Def's Br. 7; citations omitted.) Arguing that "Thermal Design has sued a publisher of 'technical and educational information' designed to 'improve energy efficiency in commercial buildings'" and that "Thermal Design does not allege to have been misled by this information," ASHRAE seeks to have Thermal Design's DTPA claim dismissed. (Def's Br. 8.)

In response, Thermal Design contends that "ASHRAE's selective quotation of the Wisconsin Supreme Court demonstrates a fundamental misrepresentation" of the case law relating to § 100.18. (Pl's Resp. 4.) Instead, Thermal Design argues that the relevant case law does not interpret § 100.18 "to limit the actionable published information to 'advertisement or sales announcements' but includes statements or representations containing any assertion, representation or statement of fact which is untrue, deceptive or misleading." (*Id*.)

To state a claim under Wis. Stat. § 100.18, the Wisconsin Supreme Court has held that a plaintiff must allege that the defendant (1) "with the specified intent, made an 'advertisement,

announcement, statement or representation . . . to the public,'" (2) "which contains an 'assertion, representation or statement of fact' that is 'untrue, deceptive or misleading,'" and (3) "that the plaintiff has sustained a pecuniary loss as a result of the 'assertion, representation or statement of fact.'" *Tietsworth v. Harley-Davidson, Inc.*, 270 Wis. 2d 146, 170, 677 N.W.2d 233, 245 (2004); *see also K&S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 2007 WI 70, ¶ 19, 301 Wis. 2d 109, ¶ 19, 732 N.W.2d 792, ¶ 19 ("To prevail on such a claim, the plaintiff must prove three elements. First, that with the intent to induce an obligation, the defendant made a representation to 'the public.' Second, that the representation was untrue, deceptive or misleading. Third, that the representation caused the plaintiff a pecuniary loss.") (citing Wis. Stat. §§ 100.18(1) and 100.18(11)(b)(2)).

In its complaint, Thermal Design does not allege that ASHRAE published the allegedly false U-Values either "with intent to sell, distribute, increase the consumption of or in any wise dispose of any . . . merchandise . . or anything offered by such person, firm, corporation" or "with intent to induce an obligation." Wis. Stat. § 100.18(1). Instead, the complaint alleges that the "advertised U-Values were provided to ASHRAE by . . . NAIMA," (Compl. ¶ 15), and that "NAIMA uses the U-Values advertised in ASHRAE 90.1-2004 in its brochures with the purpose of promoting the use of NAIMA 202 certified fiberglass insulation," (Compl. ¶ 16). To state the obvious, however, NAIMA is not named as a defendant in this case.

Thermal Design may be correct in contending that the DTPA does not "limit the actionable published information to 'advertisement or sales announcements' but includes statements or representations containing any assertion, representation or statement of fact which is untrue, deceptive or misleading." (*See* Pl's Resp. 4.) But, such contention does not go far enough. Indeed, the statute does seem to allow certain "untrue, deceptive or misleading" "assertions, representations, and statements" to fall within its purview. However, in order for those assertions, representations,

9

and statements to fall within the purview of the statute they must be accompanied by the requisite intent. *K&S Tool & Die Corp.*, 2007 WI 70, ¶ 19, 301 Wis. 2d at ¶ 19, 732 N.W.2d at ¶ 19. In other words, such assertions, representations, and statements must be made either "with intent to sell, distribute, increase the consumption of or in any wise dispose of any . . . merchandise . . or anything offered by such person, firm, corporation" or "with intent to induce an obligation." Wis. Stat. § 100.18(1).

Nowhere in its complaint does Thermal Design allege that ASHRAE's intent in publishing the allegedly faulty U-Values was either for the purpose of selling its publication or for the purpose of inducing any sort of obligation. To be sure, Thermal Design *does* allege in its complaint that "ASHRAE's pass-through reproduction of NAIMA's advertised U-Values . . . promotes the sales of ASHRAE's publication." (Compl. ¶ 17.) However, Thermal Design's allegation that ASHRAE may have gleaned some benefit from the publication of the allegedly faulty U-Values, i.e., increased circulation of its publication, does not rise to the level of an allegation that ASHRAE's *intent* in publishing the allegedly defective U-Values was to sell, distribute, or dispose of its publication or induce any sort of obligation. In my opinion, Thermal Design's allegation, that "ASHRAE's pass-through reproduction of NAIMA's advertised U-Values . . . promotes the sales of ASHRAE's publication," does not, on its own, constitute an allegation that ASHRAE acted "with the specified intent" required in order to assert a claim under the statute. *See Tietsworth,* 270 Wis.2d at 170, 677 N.W.2d at 245.

To be clear, however, the court notes that "intent" is not a magic word, and merely adding it to the complaint as it exists would not necessarily insulate the complaint from a motion to dismiss. Indeed, the Seventh Circuit Court of Appeals stated in *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614 (7th Cir. 2007):

10

> The Court explained in [*Bell Atlantic v. Twombly*, 127 S.Ct. 1955 (2007)] that the "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Instead, the Court held, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." Although this does "not require heightened fact pleading of specifics," it does require the complaint to contain "enough facts to state a claim to relief that is plausible on its face." . . . [The Seventh Circuit Court of Appeals] understands the Court to be saying only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."

*Killingsworth,* 507 F.3d at 618-19 (internal citations omitted).

In conclusion, because I find the plaintiff to have not plead that ASHRAE published the allegedly faulty U-Values with "the specified intent" required under the DTPA, ASHRAE's motion to dismiss the plaintiff's DTPA claim will be granted.

   3.   *Common Law Unfair Competition*

Addressing Thermal Design's common law unfair competition claim, ASHRAE argues that while multiple forms of this common law action exist "[a]ll forms . . . feature one 'essential element': competition between the parties." (Def's Br. 11; citing *Mercury Record Prods., Inc. v. Economic Consultants, Inc.*, 64 Wis. 2d 163, 173-74, 218 N.W.2d 705, 709 (1974); *see also Mercury Record Prods., Inc. v. Economic Consultants, Inc.,* No. 80-1106, 1981 WL 138912, *3 (Wis. Ct. App. Oct. 27, 1981 (citing 1974 *Mercury Record*). Because the complaint alleges that Thermal Design "develop[s] and provid[es] insulation systems for non-residential buildings," (Compl. ¶ 4), while ASHRAE "publishes and distributes . . . trade related publications," (Compl. ¶ 6), ASHRAE argues that "Thermal Design's allegations foreclose any possibility that it could establish this 'essential element'" and moves the court to dismiss the common law unfair competition claim. (Def's Br. 11).

In response, Thermal Design alleges that "[c]ompetition has been alleged" because the complaint states that "Thermal Design competes with the members of ASHRAE thus demonstrating

a connection between the statements and the harm." (Pl's Resp. 9; citing Compl. ¶¶ 17-27.) More specifically, Thermal Design points to paragraphs 17-27 of the complaint in which Thermal Design alleges that "NAIMA is an 'Organizational Member' with organizational seats on some of ASHRAE's committees" and that "NAIMA has at least one seat on the ASHRAE SSPC 90.1 Committee which develops the ASHRAE 90.1 Standard."

In my opinion, Thermal Design's allegation that NAIMA is a member of ASHRAE fails to transform ASHRAE into a competitor of Thermal Design's. While it may be true that NAIMA produces insulation systems that compete with those of Thermal Design's, ASHRAE, by Thermal Design's own admission, "publishes and distributes . . . trade related publications." In no way does the complaint allege that ASHRAE's trade publication competes with Thermal Design's insulation systems.

That having been said, it is not entirely clear to this court that competition is always a necessary element of a common law unfair competition claim. While it is true that *Mercury Record Productions*, the unpublished Wisconsin case cited by ASHRAE, states that "[c]ompetition is an essential element of the claim of unfair competition," that case addressed only unfair competition based upon misappropriation, a claim not asserted by the plaintiffs. *See* 1981 *Mercury Record*, 1981 WL 138912, * 3.

The court's own research has revealed very few Wisconsin state court cases discussing the claim of common law unfair competition. Indeed, that few such cases exist is further evidenced by (1) the fact that the only case cited by the defendant in support of its assertion that competition is a required element of an unfair competition claim is a single unpublished decision from 1981 and (2) the fact that the plaintiff cites no case law.

Thus, I will turn to *Restatement (Third) of Unfair Competition* (1985) for some guidance relative to identifying the elements of an unfair competition claim.

*Restatement (Third) of Unfair Competition* states that:

One who causes harm to the commercial relations of another by engaging in a business or trade is not subject to liability [for unfair competition] to the other for such harm unless:

> (a) the harm results from acts or practices of the actor actionable by the other under the rules of this Restatements relating to:
>
>> (1)  deceptive marketing . . . ;
>>
>> (2)  infringement of trademark and other indicia of identification . . . ;
>>
>> (3)  appropriation of intangible trade values including trade secrets and the right of publicity . . . ;
>
> or from other acts or practices of the actor determined to be actionable as an unfair method of competition, taking into account the nature of the conduct and its likely effect on both the person seeking relief and the public; or
>
> (b) the acts or practices of the actor are actionable by the other under federal or state statutes, international agreements, or general principles of common law apart from those considered in this Restatement.

*Restatement (Third) of Unfair Competition* § 1 (1995). In other words, the *Restatement* articulates several different types of common law unfair competition claims. A claim arises under (a) when the claim is based on the acts or practices articulated in (a), i.e., deceptive marketing, trademark infringement, or misappropriation. A claim arises under (b) when the acts or practices are otherwise actionable under another statute or the common law.

That the *Restatement* breaks down unfair competition claims in this manner is informative in that it may explain why Wisconsin courts define the elements of an unfair competition claim differently depending on the type of claim articulated in the complaint. For example, under

Wisconsin case law "[t]o establish a case of unfair competition based on trademark infringement, a plaintiff must prove two elements: (1) validity of the mark in question; and (2) infringement." *Echo Travel, Inc. v. Travel Associates, Inc.*, 870 F.2d 1264, 1266 (7th Cir. 1989). However, to establish a case of unfair competition based on misappropriation Wisconsin courts have stated that a plaintiff must prove three elements: "(1) time, labor, and money expended in the creation of the thing misappropriated; (2) competition; and (3) commercial damage to the plaintiff." 1974 *Mercury Record Productions*, 64 Wis. 2d at 174, 218 N.W.2d at 709.

Thermal Design does not articulate in its complaint on which theory its common law unfair competition claim is predicated. If Thermal Design intends for its unfair competition claim to proceed under paragraph (a) of the *Restatement*, the complaint would need to articulate which prohibited act or practice ASHRAE engaged in because each act or practice (i.e., deceptive marketing, trademark infringement, and misappropriation) requires proof of different elements under Wisconsin case law. *Compare Echo Travel, Inc*, 870 F.2d at 1266 (finding that under Wisconsin case law "[t]o establish a case of unfair competition based on trademark infringement, a plaintiff must prove two elements: (1) validity of the mark in question; and (2) infringement) *with* 1974 *Mercury Record*, 64 Wis. 2d at 174, 218 N.W.2d at 709 (finding that under Wisconsin case law to establish a case of unfair competition based on misappropriation, a plaintiff must prove three elements: "(1) time, labor, and money expended in the creation of the thing misappropriated; (2) competition; and (3) commercial damage to the plaintiff").

If Thermal Design intends to proceed under paragraph (a), its unfair competition claim is not plead with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Erickson*, 127 S.Ct. at 2200. Simply stated, the complaint does

not articulate the acts or practices in which ASHRAE engaged that form the basis of the unfair competition claim.

Similarly, if Thermal Design intends for its unfair competition claim to proceed under paragraph (b), the claim necessarily must be dismissed because, as explained above, Thermal Design has not alleged that "the acts or practices of [ASHRAE] are actionable . . . under federal or state statutes, international agreements, or general principles of common law apart from those considered in [the] Restatement" *See Restatement (Third) of Unfair Competition* § 1(b).

In sum, because Thermal Design has failed to allege a claim of common law unfair competition with the requisite specificity, ASHRAE's motion to dismiss the common law unfair competition claim will be granted.

4.  *Equity Jurisdiction*

Finally, Thermal Design argues that, even if the court were to find that it failed to adequately plead the necessary elements of its claims, it should nevertheless grant the plaintiff equitable relief. More particularly, Thermal Design argues that

> the Court can equitably enjoin the prohibited false statements of fact. A court of equity may, in fashioning a remedy for the fraudulent conduct of one party, join another party not directly involved in the fraud but one necessary to provide complete relief.

(Pl's Resp. 10; citing *Wisconsin v. Excel Mgmt. Servs., Inc.*, 111 Wis. 2d 479, 331 N.W.2d 312 (1983).)

In response, ASHRAE argues that, in the only case cited by Thermal Design in support of its equity argument, the court found a claim to exist under Wis. Stat. § 100.18. Because this court has not found such a claim to have been pleaded and because "Thermal Design has cited no authority providing that a Court may grant a form of relief where the plaintiff has alleged no claim . . . the

15

Court should dismiss Thermal Design's Complaint and decline to grant any relief sought." (Def's Reply 11.)

I agree with ASHRAE that equitable relief is inappropriate in this case. In *Excel Management Services*, the case cited by Thermal Design in support of its argument for equitable relief, the Wisconsin Supreme Court allowed the plaintiffs to obtain equitable relief from First Savings Bank, which was alleged to have "had actual knowledge of several of the [§ 100.18] violations by defendant Viking." 111 Wis. 2d at 484, 331 N.W.2d at 314. The complaint alleged that Viking, the defendant actually engaged in the prohibited conduct, was without significant financial resources to cover any damages recovered in the suit. *Id*. at 485, 331 N.W.2d at 315. Accordingly, the court allowed the plaintiff to join First Savings Bank as a defendant in the action in order to make the plaintiff whole. *Id*. at 488, 311 N.W.2d at 316. However, unlike the plaintiff in *Excel Management Services*, the plaintiff in this case has named no defendant against which a proper violation of § 100.18 has been alleged. Without the plaintiff having named some defendant against which relief under the DPTA would be proper, the court cannot begin to determine whether equitable relief against ASHRAE would be appropriate.

**B.      Motion for a Preliminary Injunction**

As stated previously, on October 10, 2007, the plaintiff filed a motion for preliminary injunction. In order to obtain a preliminary injunction, the movant "must demonstrate a likelihood that it will prevail on the merits of the lawsuit, that there is no adequate remedy at law, and that it will suffer irreparable harm without injunctive relief." *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005). "If these requirements are met, the court must then balance the degree of irreparable harm to the plaintiff against the harm that the defendant will suffer if the injunction is granted." *Id*. Moreover, the movant must show that the preliminary injunction will not

harm the public interest. *Goodman v. Ill. Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005).

"A party with no chance of success on the merits cannot attain a preliminary injunction." *AM Gen. Corp. v. Daimlerchrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002) (citing *Kiel v. City of Kenosha*, 236 F.3d 814, 815 (7th Cir. 2000)). "In the first phase of the analysis, the court decides only whether the plaintiff has any likelihood of success--in other words, a greater than negligible chance of winning." *Id.* (citing *Washington v. Indiana High Sch. Ath. Ass'n*, 181 F.3d 840, 845 (7th Cir. 1999)). Once the court determines that there is some likelihood of success, "the analysis turns to a 'sliding-scale' under which a lesser likelihood of success can be made sufficient by a greater predominance of the balance of harms." *Id*. (citing *Ty, Inc. v. The Jones Group, Inc*., 237 F.3d 891, 895 (7th Cir. 2001)).

In order to obtain a preliminary injunction, Thermal Design must first demonstrate a likelihood that it will prevail either on its DTPA claim or its unfair competition claim. Because the court is granting the defendant's motion to dismiss for failure to state a claim, it necessarily follows that the plaintiff's motion for preliminary injunction must be denied.

## IV. CONCLUSION AND ORDER

In conclusion, the defendant's motion to dismiss for failure to state a claim will be granted. However, pursuant to Thermal Design's request in its response to the defendant's motion to dismiss, (Def's Resp. 9), Thermal Design will be granted leave to amend its complaint, should it choose to do so. The plaintiff's motion for preliminary injunction will be denied.

**NOW THEREFORE IT IS ORDERED** that the defendant's motion to dismiss be and hereby is **GRANTED** (dkt # 5);

**IT IS FURTHER ORDERED** that no later than ten days following the entry of this order, the plaintiff may, if it chooses to do so, file an amended complaint addressing the deficiencies identified in this decision and order; if no amended complaint is filed, this action will be dismissed;

**IT IS FURTHER ORDERED** that the plaintiff's motion for preliminary injunction be and hereby is **DENIED** (dkt # 14).

**SO ORDERED** this 25th day of April, 2008, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge