UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THERMAL DESIGN, INC.,

  Plaintiff,

  v.              Case No. 07-C-0765

AMERICAN SOCIETY OF HEATING,
REFRIGERATING and AIR-CONDITIONING
ENGINEERS, INC.,

  Defendant.

**DECISION AND ORDER DENYING PLAINTIFF'S SECOND MOTION
FOR PRELIMINARY INJUNCTION**

**I. PROCEDURAL BACKGROUND**

On April 25, 2008, this court granted the defendant's, American Society of Heating, Refrigerating and Air-Conditioning Engineers, Inc. ("ASHRAE"), motion to dismiss the original complaint in this action and denied the plaintiff's first motion for preliminary judgment. Thereafter, on May 9, 2008, the plaintiff, Thermal Design, Inc. ("Thermal Design"), filed an Amended Complaint. ASHRAE moved to dismiss the Amended Complaint and, on October 30, 2008, I denied that motion. The Amended Complaint alleges that ASHRAE acted in violation of Wisconsin's Deceptive Trade Practices Act, Wis. Stat. § 100.18, engaged in common law unfair competition, and violated the Lanham Act, 15 U.S.C. § 1125. The parties are of diverse citizenship, and the amount in controversy exceeds $75,000, making the exercise of jurisdiction appropriate under 28 U.S.C. § 1332.

Following a scheduling conference on November 18, 2008, and upon the parties' request, I stayed this action until April 1, 2009. On April 1, 2009, I conducted another scheduling conference,

at which time a pretrial scheduling order governing the further processing of this action was issued. However, on March 18, 2010, the parties filed a joint motion to stay all proceedings in this action. I granted the motion, staying the action until January 17, 2011. Upon the re-opening of the action, Thermal Design filed a second motion for preliminary injunction. ASHRAE filed a response to that motion, and Thermal Design filed its reply. A hearing was conducted on March 17, 2011, regarding the motion, during which the parties presented oral argument. Accordingly, the motion for preliminary injunction is fully briefed and argued, and is ready for resolution. For the reasons that follow, the plaintiff's motion for a preliminary injunction will be denied.

## II. FACTUAL BACKGROUND

Thermal Design is a business engaged in the development and provision of insulation systems for large non-residential metal buildings. (Am. Compl. ¶ 4.) Thermal Design's primary product line consists of ceiling and wall insulation systems. (*Id.*)

ASHRAE is a corporation that publishes and distributes over 100 technical manuals covering a broad range of areas, including energy efficiency. Its publications provide technical information about how to achieve its standards. In promulgating its standards and guidelines, ASHRAE employs a standards consensus process. Consensus, as defined by ASHRAE, means "'substantial agreement reached by directly and materially affected interest categories. This signifies the concurrence of more than a simple majority, but not necessarily unanimity.'" (Def.'s Resp. Ex. 5 at 2.)

This case relates to ASHRAE's publication of Standard 90.1, *Energy Standard for Buildings Except Low-Rise Residential Buildings*, which sets forth the minimum standard for all state building energy codes. The Department of Energy ("DOE") has established ASHRAE's Standard 90.1 as the minimum energy conservation standard for all non-residential metal buildings in the United States that are heated or cooled. This means that if the insulated roof system of a metal building does not

2

meet the minimum requirements set forth in ASHRAE's Standard 90.1, it does not pass the state and federal building/energy code. This case specifically concerns a dispute over the U-Values or the U-Factors set forth in ASHRAE's Standard 90.1, which reflect the overall thermal efficiency of a roof structure (making it one component of the energy efficiency of a metal building).

ASHRAE published the latest version of Standard 90.1 on October 26, 2010. Before publishing Standard 90.1 in 2010, ASHRAE subjected its prior version, which was published in 1999, 2001, 2004, and 2007, to review and debate. First, in October 2008, members of the Metal Buildings Task Group ("MBTG") recommended to ASHRAE's Envelope Subcommittee certain revisions to the metal building-specific portions of 90.1 (as reflected in Addendum bb). The MBTG's recommendation included revisions of certain U-Factors and Assembly Descriptions that appeared in previous versions of 90.1. (Ferguson Rev. Decl. ¶ 14.) In January 2009, the Envelope Subcommittee approved for the 90.1 Committee's review a draft Addendum bb to the proposed 2010 version of 90.1. (Ferguson Rev. Decl. ¶ 17.) Shortly thereafter, the 90.1 Committee approved Addendum bb for public review. (Ferguson Rev. Decl. ¶ 18.) In October 2009, after the first public review period, the Envelope Subcommittee recommended that the 90.1 Committee issue for a second public review a revised Addendum bb, which was changed to include some of the U-Factors that had appeared in earlier editions of 90.1. (Ferguson Rev. Decl. ¶¶ 20-24.) The 90.1 Committee approved the revised Addendum bb for a second public review. (Ferguson Rev. Decl. ¶ 25.) Eventually, Addendum bb (in its revised form) was submitted to a third public review. (Ferguson Rev. Decl. ¶ 33.) Finally, ASHRAE's Board of Directors voted to publish the proposed Addendum bb after resolution of any appeals. (Ferguson Rev. Decl. ¶ 39.)

In October 2010, ASHRAE's Appeals Panel accepted one of the appeals lodged against the proposed Addendum bb. (Ferguson Rev. Decl. ¶ 43.) Although the granted appeal was unrelated to

3

the disputed U-Factors, ASHRAE published 90.1 without Addendum bb, consistent with its Manual of Procedures. (Ferguson Rev. Decl. ¶¶ 42, 44.) On March 23, 2011, ASHRAE represented that it will publish the fourth public-review draft that includes virtually all of the U-Factors in Table A2.3 on March 25, 2011. (Def.'s Supp. Opposition 1.)[1]

Thermal Design requests an injunction against ASHRAE, enjoining ASHRAE from further distribution and publication of ASHRAE 90.1-2010, as well as any prior versions of 90.1, without the revised metal building U-Factors and Assembly Descriptions. One basis for Thermal Design's request is that the

> ASHRAE Methodology as published, disseminated, circulated and placed before the public in this state, is inaccurate, incomplete, deceptive and misleading as it leads the public to believe that if they purchase and install the Assemblies using the ASHRAE Methodology, those Assemblies will meet the intended thermal performance claimed by ASHRAE, using current building practices, when they may not.

(Am. Comp. ¶ 11.) As a result of ASHRAE's alleged inaccurate, incomplete, deceptive, and misleading representations, Thermal Design alleges that it has suffered pecuniary loss in the form of lost sales to competitors and lost market share for its own Assemblies. (Am. Compl. ¶ 14.)

### III. ANALYSIS

To obtain injunctive relief, a plaintiff bears the burden of establishing: (1) a reasonable likelihood of success on the merits; (2) irreparable harm will ensue absent an injunction; and (3) no adequate remedy at law exists. *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011

---

[1] Thermal Design requests that the court disregard ASHRAE's supplemental opposition to its motion for a preliminary injunction because "the fact that Addendum bb is undergoing a fourth public review is not new and cannot form the basis for any of ASHRAE's supplemental arguments." (Pl.'s Resp. to Supp. Opposition 2.) In fact, Thermal Design argues that it was Thermal Design that first informed the court that Addendum bb would be undergoing a fourth public review. Because Thermal Design is not disputing the nature of the information itself, the court will grant both ASHRAE's motion for leave to file its supplemental opposition and Thermal Design's motion for leave to file a response to ASHRAE's supplemental opposition.

4

(7th Cir. 2005); *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002). If this threshold showing is made, the court considers two additional factors. First the court must balance the harm to the plaintiff if the preliminary injunction is not issued, against the harm to the defendant if the injunction is wrongfully granted. *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994). This balancing involves a sliding scale analysis: if the plaintiff's chances of success on the merits are great, then the plaintiff may make a lesser showing that the balance of harm is in the plaintiff's favor (and vice versa). *AM Gen. Corp. v. Daimlerchrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002) (citing *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001); *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000)). Second, the court should consider the public interest served by granting or denying the motion. *Promatek Indus., Ltd*, 300 F.3d at 811.

**A. Reasonable Likelihood of Success on the Merits.**

Thermal Design has moved for injunctive relief based on its Wisconsin Deceptive Trade Practices Act and Lanham Act claims.[2] Thermal Design argues that it has "some" likelihood of success on the merits because it has at least "some" likelihood of being able to establish all three elements of a claim under Wis. Stat. § 100.18. (Pl.'s Br. 9-11.) Thermal Design also argues that it has met its burden with respect to its claim under the Lanham Act because it need only present proof providing a reasonable basis for the belief that the plaintiff is likely to be damaged as a result of the false advertising; it need not present specific evidence of market effect. (Pl.'s Br. 13-14.) Because of the allegedly false representations in Standard 90.1, Thermal Design argues that its competitive position in the market is logically affected in a detrimental way. (Pl.'s Br. 14.)

---

[2] Consistent with its briefing, Thermal Design represented at oral argument that it was pursuing injunctive relief based only on § 100.18 and the Lanham Act. Thus, the court will not consider whether Thermal Design is entitled to injunctive relief under its common law unfair competition claim.

5

*1. Wisconsin's Deceptive Trade Practices Act, Wis. Stat. § 100.18*

To state a claim under Wis. Stat. § 100.18, the Wisconsin Supreme Court has held that a plaintiff must allege that the defendant (1) "with the specified intent, made an 'advertisement, announcement, statement or representation . . . to the public,'" (2) "which contains an 'assertion, representation or statement of fact' that is 'untrue, deceptive or misleading,'" and (3) "that the plaintiff has sustained a pecuniary loss as a result of the 'assertion, representation or statement of fact.'" *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 39, 270 Wis. 2d 146, 677 N.W.2d 233 (2004) (quoting Wis. Stat. § 100.18(1)); *see also K&S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 2007 WI 70, ¶ 19, 301 Wis. 2d 109, 732 N.W.2d 792 ("To prevail on such a claim, the plaintiff must prove three elements. First, that with the intent to induce an obligation, the defendant made a representation to 'the public.' Second, that the representation was untrue, deceptive or misleading. Third, that the representation caused the plaintiff a pecuniary loss.") (internal citations omitted).

ASHRAE argues that Thermal Design "has provided little, if any, evidence of at least two of these elements: that 90.1 is false or misleading, or that ASHRAE publishes 90.1 to favor some insulation manufacturers over others." (Def.'s Resp. 11.) Thermal Design, however, argues that the following provides ample evidence that the information contained in ASHRAE 90.1 is untrue, deceptive, or misleading: (1) ASHRAE "admitted as much [that the information contained in ASHRAE 90.1 is untrue, deceptive, or misleading] in its January 12, 2010 press release"; and (2) "Leslie L. Christianson, P.E., PhD, a Professor Emeritus at the University of Illinois, BioEnvironmental Engineering Group, . . . testifies that Addendum bb is accurate and appropriately reflects the applicable R-Values and U-Factors," and because such addendum is omitted from ASHRAE's publication, the 90.1-2010 Standard contains false and inaccurate information. (Pl.'s Br. 10-11.) Thermal Design also argues that the "plain language of the statute [Wis. Stat § 100.18] []

6

does not require that Thermal Design prove ASHRAE intended to induce the purchase or use of one particular insulation system over another." (Pl.'s Reply 13.)

Wisconsin courts have interpreted the purpose of § 100.18 to be that of "protect[ing] the residents of Wisconsin from any untrue, deceptive or misleading representations made to promote the sale of a product" to a consumer. *K&S Tool & Die Corp.*, 2006 WI App 148, ¶ 22, 295 Wis. 2d 298, 720 N.W.2d 507 (quoting *State v. Automatic Merchs. of Am., Inc.*, 64 Wis. 2d 659, 663, 221 N.W.2d 683 (1974)); *see also Zeller v. Northrup King Co.*, 125 Wis. 2d 31, 38, 370 N.W. 2d 809, 813-14 (Wis. Ct. App. 1985) (stating that the "aim of sec. 100.18(1) is to protect the public from untrue, deceptive or misleading representations made in sales promotions"). Concerned with sales promotions and the sales of products, § 100.18 has been interpreted as a statute that applies "by its terms" to commercial transactions. *See Slane v. Emoto, I.H.M. Co., Ltd.*, 582 F. Supp. 2d 1067, 1083 (W.D. Wis. 2008); *see also Bonn v. Haubrich*, 123 Wis. 2d 168, 366 N.W.2d 503 (Wis. Ct. App. 1985) (stating that § 100.18 protects "consumers from untrue, deceptive, or misleading representations made to promote the sale of a product").

Section 100.18, in pertinent part, reads as follows:

(1) No person, firm, corporation or association, or agent or employee thereof, with intent to sell, distribute, increase the consumption of or in any wise dispose of any real estate, merchandise, securities, employment, service, or *anything* offered by such person, firm, corporation or association, or agent or employee thereof, directly or indirectly, to the public for sale, hire, use or other distribution, or with intent to induce the public in any manner to enter into any contract or obligation . . . shall make, publish, disseminate, circulate, or place before the public, . . . in this state, in a newspaper, magazine or other publication . . . an advertisement, announcement, statement or representation of any kind to the public <u>relating to such purchase, sale, hire, use or lease of such real estate, merchandise, securities, service or employment or to the terms or conditions thereof</u>, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

Wis. Stat. § 100.18(1) (emphasis added). Yet, Thermal Design sets forth the relevant language of the statute to be as follows:

> "no . . . association . . . with intent to . . . distribute . . . anything offered by such . . . association . . . to the public for sale . . . use or other distribution . . . shall make, publish, disseminate, circulate or place before the public . . . in this state . . . in a . . . publication . . . [a] representation of any kind to the public <u>relating to such . . . use</u> . . . which . . . representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading[.]

(Pl.'s Reply 13) (emphasis added). Thermal Design, in reciting what it views to be the relevant language of § 100.18, noticeably omits the full "relating to" language contained within the statute.

Under the plaintiff's construction of the statute, a statement or representation could relate to the use of "anything." This cannot be, however, because § 100.18 is not designed to protect Wisconsin residents from misrepresentations relating to just anything. Section 100.18 is designed to protect Wisconsin consumers from misleading representations concerning commercial transactions. Thus, the scope of § 100.18, as reflected by its plain language, is more narrow than Thermal Design's construction, which is to say that statements or representations have to pass more muster than relating only to use of anything. Instead, such statements or representations must relate to the purchase, sale, hire, use or lease of real estate, merchandise, securities, service or employment or to the terms or conditions thereof. What is missing from the plaintiff's argument is any link between the allegedly false statements or representations and their relationship to the "purchase, sale, hire, use or lease of such real estate, merchandise, securities, service or employment."

From the plaintiff's written submissions and oral argument, I glean that its essential argument is that 90.1, absent the corrections in Addendum bb, contains false and misleading U-Factors and Assembly Descriptions. Another argument, although less obvious, is that 90.1 is false, deceptive, or misleading because it does not represent the consensus that ASHRAE claims to support its standards and guidelines.

8

But, without any argument or evidence being put forth by Thermal Design to demonstrate that ASHRAE made false statements or representations relating to the use of "real estate, . . . securities, service, or employment," Thermal Design is not reasonably likely to succeed on any claim that statements or representations regarding U-Factors, Assembly Descriptions, and consensuses do indeed relate to "real estate, . . . securities, service or employment." The same would be true for the category of "merchandise." According to Black's Law Dictionary, "merchandise" is defined as "[g]oods that are bought and sold in business; commercial wares." Black's Law Dictionary 1000 (7th ed. 1999). Bearing in mind this definition, any argument that Thermal Design has shown a likelihood of success in demonstrating that U-Factors, Assembly Descriptions, and consensuses relate to "merchandise" would be, to say the least, unreasonable. Simply put, Thermal Design has not persuaded me that ASHRAE made the afore-identified statements or representations in connection with any commercial transaction, as is required by § 100.18.

That § 100.18 applies to only commercial transactions is not the only obstacle to Thermal Design's obtaining injunctive relief. Recent judicial interpretations of § 100.18 pose a number of additional obstacles for Thermal Design.

First, the United States District Court for the Western District of Wisconsin recently held that §100.18 does not provide a cause of action for misrepresentations made to non-parties. *See Riddell, Inc. v. Schutt Sports, Inc.*, 724 F. Supp. 2d 963, 980 (W.D. Wis. 2010); *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 922-23 (W.D. Wis. 2010); *Spacesaver Corp. v. Marvel Group. Inc.*, 621 F. Supp. 2d 659, 663-64 (W.D. Wis. 2009). In *Grice Eng'g*, the plaintiff alleged only that the defendant made misrepresentations to third parties, and not to the plaintiff specifically. 691 F. Supp. 2d at 922. Acknowledging that the Wisconsin Supreme Court had not yet addressed such issue, United States District Judge Barbara Crabb nevertheless held that one competitor could not sue

9

another competitor under § 100.18 for misrepresentations made to non-parties. *Id.* at 922-23. The holding in *Grice Eng'g* was reaffirmed by the court in *Riddell*, in which a manufacturer and seller of sports equipment brought suit under § 100.18 against a competitor for an alleged falsity in statements regarding "a purported health benefit" in certain football helmets. 724 F. Supp. 2d at 980-81.

To be sure, the instant case does not fit neatly into the precise contours of *Grice Eng'g* and *Riddell* because Thermal Design and ASHRAE are not competitors. However, the court in *Grice Eng'g* and in *Riddell* did not focus on the parties' relationships. *See Riddell*, 724 F. Supp. 2d at 980 (dismissing the defendant's argument about not having a past relationship with the plaintiff and focusing on who was deceived). Rather, the court looked to whom any alleged misrepresentations were made. In doing so, the court focused on the types of parties that the statute was designed to protect and persons or entities who could properly bring § 100.18 claims.

In *Grice Eng'g*, the court held that the "statute is not designed to protect product manufacturers from the deceptive acts of their competitors." 691 F. Supp. 2d at 923. In *Riddell*, the court, in dismissing the § 100.18 claim, framed the problem as this: "[competitor A] is not the right entity to complain about [competitor B's] alleged deception because the deception was to *others*." 724 F. Supp. 2d at 980-81.

Relatedly, courts have construed the third prong of a § 100.18 claim – that a representation cause a plaintiff a pecuniary loss – as encompassing a reliance aspect. *See Novell v. Migliaccio*, 2008 WI 44, ¶ 49, 309 Wis. 2d 132, 749 N.W.2d 544. In this fashion, § 100.18 requires more than a showing by the plaintiff that it "sustained a loss that is somehow connected to a misrepresentation made to 'the public.'" *Grice Eng'g*, 691 F. Supp. 2d at 923. "Rather, . . . the question is whether 'the representation . . . *materially induce[d] the plaintiff's decision to act* and [whether the] plaintiff would have acted in the absence of the representation.'" *Id.* (quoting *Novell*, 2008 WI 44, ¶ 51); *see also*

10

WIS JI-CIVIL 2418 (2009) (stating that the test is whether the plaintiff would have acted in the absence of the representation, which representation need not be the sole motivation to proceed with the transaction, but must be a material inducement).

Here, the gravamen of Thermal Design's allegations is that ASHRAE has made a statement or representation to the public that is untrue, deceptive or misleading. Because the public is a non-party, *Grice Eng'g* and *Riddell* would counsel that no cause of action lies under § 100.18 for Thermal Design (even if ASHRAE's alleged misrepresentations caused Thermal Design to lose business). Additionally, Thermal Design has not alleged, much less demonstrated, that it relied on ASHRAE's statements and representations and that it was induced by ASHRAE to do anything. Instead, Thermal Design focuses on the public's reliance on 90.1. Thermal Design states that "purchasers and prospective purchasers of Thermal Design's Assemblies have and will be induced to purchase competitive Assemblies." (Amend. Compl. ¶ 18.) Therefore, even if Thermal Design could succeed on the assertions that (1) ASHRAE made a statement or representation relating to the purchase, sale, hire, use or lease of real estate, merchandise, securities, service, or employment, and (2) ASHRAE made such statement or representation to Thermal Design, it is not reasonably likely that Thermal Design would prevail on its claim that it suffered a pecuniary loss. This is because Thermal Design has not shown, and likely cannot show, that it relied on such statement or representation to its detriment.

Although Thermal Design's § 100.18 claim previously survived ASHRAE's motion to dismiss, the instant motion for preliminary injunction requires more scrutiny. After all, the plaintiff here is seeking the extraordinary remedy of injunction; it is not merely seeking the right to proceed past the initial pleading stage of the action.

Given the foregoing, the viability of Thermal Design's Deceptive Trade Practices Act claim is most questionable. Thermal Design claims to be protecting Wisconsin residents from any untrue, deceptive, or misleading representations made in sales promotions. But, it is questionable whether Thermal Design is even the right entity to complain about ASHRAE's alleged deception. Equally questionable is whether the statute is designed to protect entities in Thermal Design's position.

For all of the reasons set forth above, Thermal Design has not established a reasonable likelihood of success on the merits of its claim that ASHRAE violated Wisconsin's Deceptive Trade Practices Act, Wis. Stat § 100.18.

*2. Lanham Act, 15 U.S.C. § 1125*

The Lanham Act states, in pertinent part, as follows:

(a) Civil action.

    (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, of any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–

. . .

    (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

Thermal Design argues that it is entitled to injunctive relief under the Lanham Act because it "need not show specific evidence that the statements at issue actually resulted in some definite loss." Rather it "need only show that the defendant's alleged statements could logically affect [its] competitive position in the market." (Pl.'s Br. 14.) According to Thermal Design, because the

allegedly false statements "logically could affect Thermal Design's sales, profits and competitive position in the market," injunctive relief is appropriate. (Pl.'s Br. 14.)

According to ASHRAE, the "Lanham Act only grants courts the 'power to grant injunctions . . . to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademarks Office.'" (Def.'s Resp. 14.) ASHRAE argues that, because Thermal Design has not alleged or provided any evidence of ASHRAE's trademark infringement, it has not alleged a cause of action supporting an injunction under the Lanham Act, much less shown a likelihood of success on that claim. (Def.'s Resp. 14-15.) ASHRAE also argues that Thermal Design "has not adduced facts showing ASHRAE's representations are false or misleading or were made in a commercial advertisement or promotion." (Def.'s Resp. 15 n.5.)

First and foremost, ASHRAE is incorrect to argue that courts have the power to grant injunctions in Lanham Act cases *only* involving trademark infringement. According to 15 U.S.C. § 1116, courts "shall have power to grant injunctions . . . to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office *or to prevent a violation under subsection (a), (c), or (d) of section 43 [15 USCS § 1125]*." 15 U.S.C. § 1116(a) (emphasis added). Thermal Design has alleged a violation of 15 U.S.C. § 1125(a), giving a court the power to grant injunctive relief where appropriate.

Moving on, I find it necessary to revisit my October 30, 2008 discussion regarding whether Thermal Design has asserted a "discernible competitive injury." *See L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561, 575 (7th Cir. 1993). In its response to ASHRAE's motion to dismiss, Thermal Design, relying on caselaw from other circuits, argued that the key to standing on a Lanham Act claim is the alleged "competitive injury," and not the congruence between the parties' businesses. Since that time, however, district courts within the Seventh Circuit have repeatedly interpreted *L.S.*

*Heath* as having adopted a categorical approach to the standing requirement in Lanham Act cases. Under such categorical approach, the parties must be competitors of one another, or in other words, the parties must compete with one another in the same business. *See Emerging Material Techs.,Inc. v. Rubicon Tech., Inc.*, Case No. 09 C 3903, 2009 U.S. Dist. LEXIS 117241, at *8-9 (N.D. Ill. Dec. 14, 2009) (stating that a competitive injury "requires the plaintiff and defendant to be direct competitors, in other words, 'that it competes at the same level of business as the defendant'"); *Platinumtel Communs., Inc. v. Zefcom, LLC*, No. 08-CV-1062, 2008 U.S. Dist. LEXIS 104746, at *13-19 (N.D. Ill. Dec. 30, 2008) (recognizing other judges in the district to have required plaintiff and defendant to be direct competitors); *Medallion Prods., Inc. v. McAllister*, No. 06-C-2597, 2008 U.S. Dist. LEXIS 95554, at *14 (N.D. Ill. Nov. 20, 2008) (stating that "the plaintiff must be a competitor of the defendant"); *see also Gail Green Licensing & Design, Ltd. v. Accord, Inc.*, No. 05 C 5303, 2006 U.S. Dist. LEXIS 72713, at *12-15 (N.D. Ill. Oct. 5, 2006) (stating, "to have standing, a plaintiff must compete with the defendant in the same business").

That courts have repeatedly interpreted *L.S. Heath* as requiring direct competition between a plaintiff and defendant in order to establish standing to sue under the Lanham Act calls into question Thermal Design's standing to pursue its Lanham Act claim. It follows that if Thermal Design's status as to its standing is in doubt, Thermal Design surely is not reasonably likely to succeed on the merits of its unfair competition claim.

Even if Thermal Design's standing to raise a Lanham Act claim were not at issue in light of recent judicial interpretation of *L.S. Heath*, Thermal Design does not have a reasonable likelihood of success on the merits of its Lanham Act claim. According to the Seventh Circuit Court of Appeals, a claim for false or deceptive advertising under the Lanham Act requires proof of the following elements:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

*Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999). Under the first element, false statements may constitute (1) commercial claims that are literally false as a factual matter, or (2) claims that may be literally true or ambiguous, but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers. *Id.* at 820. Also under the first element, "commercial advertising or promotion" is not coextensive with commercial speech under the First Amendment. *See First Health Group. Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803 (7th Cir. 2001). Instead, "[a]dvertising is a subset of persuasion and refers to dissemination of prefabricated promotional material." *Id.* at 804. "[It] is a form of promotion to anonymous recipients, as distinguished from face-to-face communication. In normal usage, an advertisement read by millions (or even thousands in a trade magazine) is advertising, while a person-to-person pitch by an account executive is not." *Id*. at 803-04.

While Thermal Design survived a motion to dismiss by sufficiently pleading that ASHRAE's alleged misrepresentations were made in the context of "commercial advertising or promotion," I stated at that time that I was "not convinced that the statements made by ASHRAE are *clearly* made in advertising and promotion." (Oct. 30, 2008 Dec. and Order 11.) I am still not convinced that Thermal Design is reasonably likely to succeed in proving that the statements made by ASHRAE are made in commercial advertising and promotion. Significantly, Thermal Design offers little more with respect to this element than it did at the motion to dismiss stage; in fact, Thermal Design omits any argument that the statements made by ASHRAE are made in commercial advertising or promotion.

15

Moreover, ASHRAE cautions its audience that its standards and guidelines are just that: standards and guidelines. Specifically, ASHRAE states that it "does not guarantee, certify, or assure the safety or performance of any products, components, or systems tested, installed, or operated in accordance with ASHRAE's Standards or Guidelines . . . ." (Def.'s Resp. Ex. 5 at 2.) Keeping this disclaimer in mind, it is not *reasonably likely* that Thermal Design would succeed on a claim that ASHRAE's publication of 90.1 promotes certain Assemblies over others. In other words, Thermal Design has not satisfied its burden for seeking injunctive relief on its Lanham Act claim.

Because Thermal Design must make the required showing as to all three prongs of the standard for obtaining injunctive relief, its failure to show a reasonable likelihood of success on the merits of its claims is fatal to its motion for preliminary injunction. Therefore, the court will deny Thermal Design's motion for a preliminary injunction under Federal Rule of Civil Procedure 65.

Finally, Thermal Design moves the court to file certain exhibits under seal because they are copyrighted materials of ASHRAE. This reason is insufficient to demonstrate why such documents should be sealed. Accordingly, Thermal Design's motion to file documents under seal will be denied.

**NOW THEREFORE IT IS ORDERED** that the plaintiff's motion for preliminary injunction (Docket No. 103) be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the defendant's motion for leave to file supplemental opposition to the plaintiff's motion for preliminary injunction (Docket No. 118) be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the plaintiff's motion for leave to file a response to the defendant's supplemental opposition to its motion (Docket No. 119) be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the plaintiff's motion to file documents under seal (Docket No. 109) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that on April 28, 2011 at 9:30 a.m. in Courtroom 242, U.S. Courthouse, 517 East Wisconsin Avenue, Milwaukee, Wisconsin 53202, the court will conduct a conference with the parties to discuss the further processing of this case to final resolution and judgment.

**SO ORDERED** this 4th day of April 2011 at Milwaukee, Wisconsin.

        **BY THE COURT:**

        s/ William E. Callahan, Jr.
        WILLIAM E. CALLAHAN, JR.
        United States Magistrate Judge